UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HRISTOS DASKALAKIS, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v.  ) | No. 1:24-cv-00271-JPH-MJD |
| ) | |
| CP INDY DT, LLC D/B/A HYATT REGENCY ) | |
| INDIANAPOLIS, et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER ON MOTION TO COMPEL**

This matter is before the Court on Plaintiffs' Motion to Compel. [Dkt. 110.][1] The motion is fully briefed, and the Court held a hearing on the motion on April 30, 2025. [Dkt. 120.] The Court has also conducted an *in camera* review of the documents at issue. For the reasons and to the extent set forth below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. Background

This case arises out of an incident that began late in the evening of September 8, 2023, when Plaintiffs, who were at the Hyatt Regency hotel in Indianapolis to have dinner, were trapped in an elevator at the hotel for several hours (hereinafter referred to as "the Incident"). At issue in the instant motion are documents that Defendant CP Indy DT, LLC, (hereinafter referred to as "Defendant") has withheld as privileged and/or as work product. As discussed in more

---

[1] The Court notes that Plaintiffs failed to comply with Local Rule 5-6(a)(2), which requires that each exhibit to a motion be "given a title which describes its content." The purpose of this rule is to permit the Court and the parties to quickly locate an exhibit on the docket. Plaintiffs counsel shall take care to comply with this rule in all future filings.

detail below, the documents at issue relate to Defendant's documentation and investigation of the Incident.

## II. Discussion

Defendant has withheld nine categories of documents.[2] Defendant asserts that all of the withheld documents are protected from disclosure because they were "prepared in anticipation of litigation"; in other words, because they are work product. Defendant also asserts the insurer-insured privilege as to all but one of the withheld categories, and the attorney-client privilege as to three of the categories. The Court examines the asserted privilege(s)[3] as to each of the documents at issue, in turn, below. In doing so, the Court is mindful that "because evidentiary privileges operate to exclude relevant evidence and thereby block the judicial fact-finding function, they are not favored and, where recognized, must be narrowly construed." *Mem'l Hosp. for McHenry Cnty. v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981) (citing *United States v. Nixon*, 418 U.S. 683, 710 (1974).

### A. Work Product Doctrine

The work product doctrine is set forth in Federal Rule of Civil Procedure 26(b)(3)(A):

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).

The application of the doctrine is a fact-sensitive, document-by-document inquiry.

---

[2] It was improper for Defendant to lump multiple documents together on its privilege log; each document should have been listed separately because "[t]he inquiry into whether documents are subject to a privilege is a highly fact-specific one" and "[a]n assertion of privilege therefore must be made on a document-by-document basis," *In re Grand Jury Proc.*, 220 F.3d 568, 571 (7th Cir. 2000).

[3] The work product doctrine is not technically a privilege. However, it must be asserted in the same manner as a privilege, *see* Fed. R. Civ. P. 26(b)(5), and the Court will use the term "privilege" as shorthand to refer to the two asserted privileges and the work product doctrine.

> In the work product context, the threshold question when determining whether a document was prepared in anticipation of litigation generally is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared for or obtained *because of* the prospect of litigation." *North Shore Gas Co. v. Elgin, Joliet & E. Ry. Co.*, 164 F.R.D. 59, 61 (N.D. Ill. 1995) (citation omitted) (emphasis added); *see Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 145 F.R.D. 84, 86 (N.D. Ill. 1992). Therefore, documents prepared for other reasons, such as documents created in the ordinary course of business, cannot be withheld as work product. *See Caremark, Inc. v. Affiliated Computer Servs., Inc.*, 195 F.R.D. 610, 614 (N.D. Ill. 2000); *see also In re General Instrument Corp. Sec. Litig.*, 190 F.R.D. 527, 530 (N.D. Ill. 2000) ("[A] document prepared for both legal and non-legal review is not privileged."); *Allendale*, 145 F.R.D. at 87 (holding that documents prepared in the ordinary course of business are not work product even if litigation is imminent or ongoing).

*City of Evanston v. N. Illinois Gas Co.*, 2017 WL 11558474, at *2 (N.D. Ill. Aug. 31, 2017). As the Seventh Circuit has stated:

> "The mere contingency that litigation may result is not determinative. If in connection with an accident or an event, a business entity in the ordinary course of business conducts an investigation for its own purposes, the resulting investigative report is produceable in civil pre-trial discovery. As stated in *Soeder v. General Dynamics Corp.*, 90 F.R.D. 253 (D. Nev. 1980)[,] the distinction between whether defendant's 'in house' report was prepared in the ordinary course of business or was 'work product' in anticipation of litigation is an important one. 90 F.R.D. at 255. The fact that a defendant anticipates the contingency of litigation resulting from an accident or event does not automatically qualify an 'in house' report as work product. . . . A more or less routine investigation of a possibly resistable claim is not sufficient to immunize an investigative report developed in the ordinary course of business. . . . While litigation need not be imminent, the primary motivating purpose behind the creation of a document or investigative report must be to aid in possible future litigation."

*Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1118-19 (7th Cir. 1983) (quoting *Janicker v. George Washington University*, 94 F.R.D. 648, 650 (D.D.C. 1982)); *see also Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2010) (reiterating *Binks* standard).

   1. *Categories One, Two, and Three*

Category One consists of one document, an "Associate Statement" form completed by Ferdielyn Rasay, an employee of Defendant, contemporaneously with the Incident. Category

3

Two consists of one document, an "Associate Statement" form completed by Tyler Miles, an employee of Defendant, contemporaneously with the Incident. Category Three consists of a Hotel Incident Report form completed by Jeremiah Grier, an employee of Defendant, contemporaneously with the Incident.[4]

      Defendant argues that these documents are protected work product. However, it is clear to the Court that each of these documents was prepared in the ordinary course of business as part of the Defendant's routine documentation of and investigation into an incident that occurred on its premises that affected the safety of its customers. Indeed, Defendant's customers would be surprised (and likely unhappy) to learn that the primary reason Defendant conducted such an investigation was because of the prospect that litigation might arise out of the Incident. Clearly the desire to determine whether steps could be taken to avoid similar incidents in the future to better serve the needs of Defendant's customers is the primary motivation for the creation of such contemporaneous reports. While Defendant makes much of the fact that one of the Plaintiffs made a comment about suing Defendant once she was freed from the elevator, Defendant concedes that the forms at issue would have been completed regardless of whether that statement was made and, in fact, some of them were completed, at least partially, before the statement was made. Indeed, the forms would likely have been completed had Plaintiffs been trapped in the elevator for six minutes rather than six hours, but the former would not likely have led to litigation.

---

[4] The privilege log notes that this form contains the following language: "This report has been prepared specifically in anticipation of litigation, and constitutes attorney/client product, and as such, is privileged information." It goes without saying that putting that language on a document does not make it so.

Defendant's argument really hinges on the fact that litigation is **always** a possibility when something like the Incident occurs in its hotel. But as the language quoted from *Binks* above makes clear, the general risk of litigation is simply not enough to convert a form that would have been completed as a matter of routine business practice into protected work product.[5] It is true that the threat of litigation looms whenever an incident occurs at a business, whether it results in serious injury or a mere inconvenience to a customer or other invitee, or something in between. But "[d]ocuments are not work product simply because 'litigation [is] in the air.'" *IBJ Whitehall Bank & Tr. Co. v. Cory & Assocs., Inc.*, 1999 WL 617842, at *5 (N.D. Ill. Aug. 12, 1999). In our society, litigation is always in the air, but even if we did not live in such a reality, hotels would still create contemporaneous reports of incidents for purely business reasons.

Defense counsel suggested at the hearing that a finding that these routine documents were not protected as work product would somehow punish Defendant for having a policy of routinely documenting and investigating incidents that occur in the hotel. But that argument turns the work product doctrine on its head.

> [I]n deciding whether the privilege asserted should be recognized, it is important to take into account the particular factual circumstances of the case in which the

---

[5] The Court appreciates Defendant's close reading of *Janicker*, 94 F.R.D. 648, which is the case relied upon in *Binks*, and Defendant's attempt to distinguish *Soeder*, 90 F.R.D. 253, a case relied upon by *Janicker*. However, the Court disagrees that the safety and comfort of its customers is not a central part of the business of a hotel. Further, Defendant's reliance on *McMahon v. Eastern S.S. Lines, Inc.*, 129 F.R.D. 197 (S.D. Fla. 1989), is misplaced. That case did not involve routine, in-house reports involving an incident, but rather a detailed investigation of the cause of a fire that was conducted by outside counsel who were hired for that purpose because of the likelihood that passengers who had been injured in the fire would sue. The court in that case determined that the likelihood of litigation was the primary motivation for the preparation of the documents at issue; here, the Court finds that is not the case. If the reports at issue here were not routine, contemporaneous reports, but rather reports generated by a non-routine outside investigation initiated by Defendant because a very serious incident had occurred in the hotel, the result likely would be different. Defendant has cited no cases in which the type of contemporaneous and routine forms completed by a party's employees were found to be protected work product.

> issue arises. The court should weigh the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case.

*Shadur,* 664 F.2d at 1061-62 (internal quotation marks and citation omitted). In other words, a privilege protects things that would otherwise be discoverable—because they are relevant to the claims or defenses in the case—because protecting them serves some greater purpose.

> [T]he work-product doctrine is designed to serve dual purposes: (1) to protect an attorney's thought processes and mental impressions against disclosure; and (2) to limit the circumstances in which attorneys may piggyback on the fact-finding investigation of their more diligent counterparts.

*Sandra T.E,* 600 F.3d at 621-22 (citing *Hickman v. Taylor,* 329 U.S. 495 (1947)). Neither of those purposes are implicated by the type of routine, "precautionary documents 'developed in the ordinary course of business' for the 'remote prospect of litigation,'" *id.* at 622, that are found in Categories One, Two, and Three. They are simply not protected work product.

2. *Category Four*

Category Four is described by Defendant as the "Claim File Report" compiled by Gallagher Bassett Services, Inc., ("Gallagher Bassett") which Defendant describes on the privilege log as the "claims administrator for [Defendant's] insurer." The parties agreed at the hearing that virtually all of the documents contained in Category Four already have been produced (or should have been and would be produced). Remaining at issue were copies of the Category One, Two, and Three documents and an Index, which is part of another document and was improperly withheld as irrelevant; that document is not privileged, and it must be produced.[6] Accordingly,

---

[6] The Index is part of another document that has been produced. As the Court explained at the hearing, a party cannot withhold part of a document on relevance grounds.

there is nothing in Category Four that must be addressed by the Court independent of Categories One, Two, and Three. All of the documents identified in Category Four must be produced.

    3. *Category Five*

Category Five is a print-out of claims notes from Gallagher Bassett. The Court finds that everything in these notes begining on October 6, 2023, is protected work product, because on that date Gallagher Bassett was notified that Plaintiffs had hired counsel to pursue a claim against Defendant and litigation clearly was anticipated. Prior to that date, however, the notes relate to a routine investigation into whether the Incident was covered by insurance and what Defendant's liability for the Incident might be if a claim—which might not necessarily involve litigation—were to arise in the future.[7] Those notes are not protected work product. *See Bonilla v. Gerlach*, 2024 WL 4497114, at *4 (W.D. Okla. Oct. 15, 2024) ("'files generated during the investigation of third party claims are [often] made in anticipation of litigation and are not discoverable[,]'" at least where written notification of a potential claim has been received") (quoting *Weitzman v. Blazing Pedals, Inc.*, 151 F.R.D. 125, 126 (D. Colo. 1993), and also citing *Cornhusker Cas. Co. v. Skaj*, 2012 WL 12541136, at *3 (D. Wyo. Apr. 5, 2012) (finding that claim files generated by insurer before receipt of written notification of third-party's claim were not protected); *Hurtado v. Passmore & Sons, L.L.C.*, 2011 WL 2533698, at *2 (D. Colo. June 27, 2011) (finding that insurance claim file documents were not protected "[b]ecause there was no actual claim pending when the investigation was undertaken here, nor had Defendant been contacted by Plaintiffs or their counsel about filing a potential claim"); *Underwriters Ins. Co. v. Atlanta Gas Light Co.*, 248 F.R.D. 663, 668 (N.D. Ga. 2008) (finding that claim file documents

---

[7] The Court recognizes that one of the Plaintiffs made a statement about suing in the heat of the moment when she was rescued from the elevator. However, Defendant has not demonstrated that Gallagher Bassett would have done anything differently had that statement not been made.

were prepared in anticipation of litigation where insurer was "initially engaged because of the very prospect of litigation involving the [third-party] claim")).

   4. *Categories Six, Seven, Eight, and Nine*

Category Six consists of an email between Kyle Hueston, the general manager of the hotel, and heritageelevatorconsulting77@gmail.com,[8] providing details of the incident. Maryann Gagliardi of Columbia Sussex[9] is copied. The email was sent the morning of Monday, September 11, 2023. Maryann Gagliardi forwarded the email to contactincident@columbiasussex.com that afternoon. That email address forwarded it to karen_proctor@gbta.com, whom Defendant identifies as a Gallagher Bassett claims professional.

Similarly, Category Seven consists of emails between hotel employee Jeremiah Grier, hotel employee Kyle Hueston, Maryann Gagliardi of Columbia Sussex, and Melinda Cole of Gallagher Bassett on September 12th and 13th.

Category Eight consists of an email dated October 3, 2023, from Jim Gross at Heritage Elevator Consulting, LLC, to hotel employee Kyle Hueston and Maryann Gagliardi of Columbia Sussex; a response to that email from Kyle Hueston later that day, and the forwarding of that email by Gagliardi to Melinda Cole of Gallagher Bassett a few minutes later.

Finally, Category Nine consists of emails sent between Kyle Hueston and Maryann Gagliardi on September 11, 2023.

All of these documents were created prior to October 6, 2023, when Defendant was put on notice that Plaintiffs were pursuing a claim against them. Defendant has not demonstrated

---

[8] Defendant does not provide any information about who this is and what their role was with regard to the Incident. Obviously, this information is critical to the assertion of privilege over the documents to and from this email address.

[9] Defense counsel explained at the hearing that Columbia Sussex is the parent company of Defendant.

that these emails were sent in anticipation of litigation, rather than simply routine claims administration activities. Accordingly, they are not protected work product.

### B. Insurer-Insured Privilege

The Indiana Supreme Court first recognized the insurer-insured privilege in the case of *Richey v. Chappell*, 594 N.E.2d 443 (Ind. 1992). That court held "where the policy of insurance requires the insurer to defend claims against the insured, statements from the insured to the insurer concerning an occurrence which may be made the basis of a claim by a third party are protected from disclosure." *Richey*, 594 N.E.2d at 447. The reason for the privilege is:

> by the terms of the common liability insurance contract, the insured effectively delegates to the insurer the selection of an attorney and the conduct of the defense of any civil litigation. The insured is ordinarily not represented by counsel of his own choosing either at the time of making the communication or during the course of litigation. Under such circumstances, we believe that the insured may properly assume that the communication is made to the insurer as an agent for the dominant purpose of transmitting it to an attorney for the protection of the interests of the insured.

*Id.* Thus, "*Richey's* application is limited to situations where an insurer is required to defend the insured in an action by a third party." *Kimbrough v. Anderson*, 55 N.E.3d 325, 335 (Ind. Ct. App. 2016).

In this case, Defendant has not demonstrated that the insurer-insured privilege applies to any of the documents at issue. Categories One, Two, and Three are not communications with an insurance company; they are forms completed by Defendant's employees. There is no evidence that they were completed at the request of an insurance company, and the fact that those forms might later have been forwarded to an insurance company does not cloak them with privilege. Categories Four, Five, Six, Seven, and Eight involve Gallagher Bassett. Defendant has not demonstrated that Gallagher Bassett is an insurer of Defendant or that it had a duty to defend Defendant; indeed, when questioned at the hearing, defense counsel was unable to articulate any

9

details regarding the relationship between Gallagher Bassett and Defendant. In addition, Defendant has not attempted to identify which documents within the categories for which it asserts the insurer-insured privilege constitute statements from the insured to the insurer, which is the privilege recognized in *Richey*. Defendant also does not address the third parties involved in some of the communications and whether their inclusion would constitute a waiver of any privilege; indeed, Defendant does not even identify who those third parties are.

"The mere assertion of a privilege is not enough; instead, a party that seeks to invoke the attorney-client privilege has the burden of establishing all of its essential elements." *United States v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003) (citing *In re Grand Jury Proceedings (Thullen),* 220 F.3d 568, 571 (7th Cir. 2000); *United States v. Evans,* 113 F.3d 1457, 1461 (7th Cir. 1997)). The same is true of the insurer-insured privilege, which is an extension of the attorney-client privilege.

> To establish insurer-insured privilege, a party must prove: "(1) the identity of the insured; (2) the identity of the insurance carrier; (3) the duty to defend [the lawsuit]; and (4) that a communication was made between the insured and an agent of the insurer." *Chicago Trust Co. v. Cook Cnty. Hosp.*, 698 N.E.2d 641, 649 (Ill. App. Ct. 1998). The burden of establishing privilege is on the party claiming the privilege. *Caldwell v. Advocate Condell Med. Ctr.*, 87 N.E.3d 1020, 1036 (Ill. App. Ct. 2017).

*Frick's Quality Meats, Inc. v. Admiral Parkway, Inc.*, 2020 WL 5500530, at *1 (S.D. Ill. Sept. 11, 2020) (applying Illinois law). Defendant simply has not met that burden here. Based on the record before it, the Court cannot find that the insurer-insured privilege applies to any of the withheld documents.

### C. Attorney-Client Privilege

Finally, Defendant asserts the attorney-client privilege as to Categories Three, Four, and Five. Defendant's argument about attorney-client privilege is:

10

> Privilege Log items 3 through 5 contain communications subject to the attorney-client privilege. As previously noted, Item 3—CP Indy's Incident Report—was created to capture facts to be communicated to CP Indy's insurer, which CP Indy properly assumed would ultimately be transmitted to an attorney for the protection of the interests of the insured. See, *Richey*, 594 N.E.2d 443 at 446. Items 4 and 5 were similarly created by claim administrator Gallagher Bassett Services for purposes of communicating relevant facts to CP Indy's defense counsel.

[Dkt. 113 at 15.] This is simply a reassertion of the insurer-insured privilege, not an independent assertion of the attorney-client privilege. It is true, as Defendant asserts, that "*Richey* grounded its decision finding [the insured-insurer] privilege to exist under Indiana law in the attorney-client privilege." *Id.* But if the attorney-client privilege itself applied to an insured's statement to its insurer, there would have been no reason for the Indiana Supreme Court to recognize the insurer-insured privilege; it would have simply held that the attorney-client privilege applied. The attorney-client privilege does not apply to any of the documents at issue.

### III. Conclusion

For the reasons set forth above, Plaintiffs' Motion to Compel, [Dkt. 110], is **DENIED** with regard to the notes in Category Five dated on or after October 6, 2023, because those documents are protected work product. The motion is **GRANTED** as to all other documents at issue, which shall be produced to Plaintiffs **on or before June 9, 2025**.

SO ORDERED.

Dated: 30 MAY 2025

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.

11